## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## FT MYERS DIVISION

Case No.: 2:17-CV-00594-SPC-MRM

SIMON PAREDES,

           Plaintiff,

   v.

BANK OF AMERICA, N.A.,

           Defendant.

## MOTION AND MEMORANDUM IN SUPPORT BY DEFENDANT
## BANK OF AMERICA, N.A. TO DISMISS PLAINTIFF'S COMPLAINT

Defendant, Bank of America, N.A., respectfully moves this Court to dismiss Plaintiff's Complaint ("Compl.," ECF No. 1) under FED. R. CIV. P. 12(b)(6).

## INTRODUCTION

In this case—whose Complaint is almost entirely copy-and-pasted from dozens of other similarly theorized lawsuits Plaintiff's counsel has filed in this District—Plaintiff alleges that he sought a mortgage loan modification from Bank of America back in 2009, was "declined," and is therefore the victim of fraud. Compl. ¶¶ 36, 41, 43.[1] This claim of fraud is both meritless and time-barred. Plaintiff's Complaint fails to plead the basic elements of a fraud claim (including an actual misrepresentation) and suffers from numerous other legal defects not least of which are that the claim is barred by Florida's Banking Statute of Frauds as the purported misrepresentations concerning Plaintiff's credit agreement were never reduced to writing and that the "fraud" is subject to a four-year statute of limitations.

---

[1] Plaintiff's counsel originally sought to join all of those dozens of Plaintiffs in a single complaint making virtually identical allegations about each one of them. *See Torres v. Bank of Am., N.A.*, No. 17-1534. When Judge Lazzara dismissed and severed those claims (*see id*., ECF No. 19 (Oct. 6, 2017)), Plaintiff's counsel re-filed them all as separate, individual actions, but they continue to recycle the same boilerplate allegations.

In any event, the allegations in the Complaint fail to meet any of the pleading requirements for fraud.  The Complaint provides little detail about the statements allegedly made and omits essential facts about "precisely what statements [or omissions] were made," who made them and when, and how they were misleading. *Brooks v. Blue Cross & Blue Shield of Fla.*, 116 F.3d 1364, 1371 (11th Cir. 1997).  Nor would a fraud claim be cognizable here even if pled in greater detail, because Florida law does not permit a plaintiff to claim fraud as to matters governed by contract—and the alleged misrepresentations here all relate directly to Bank of America's performance of the terms of the mortgage.

Plaintiff's attempt to shoehorn his vaguely pled grievances about being "declined" for a loan modification into a claim for fraud is reflective of the overheated rhetoric that characterizes the Complaint from top to bottom. Plaintiff accuses Bank of America of making a "calculated decision" to pursue a "complex scheme to defraud" (Compl. ¶¶ 16, 21), and tries to use this filter to portray all of his communications with Bank of America in the most sinister light. Plaintiff neglects to plead any facts showing the statements made to him are false at all, much less that they were made to him with fraudulent "intent" as part of a "deliberate," "methodical" "scheme." *Id.* at ¶¶ 16, 21, 26 & *passim*.

This is a fraud case pleaded with all the attendant bluster, sound, and fury—but without any actual fraud.  Accordingly, it should be dismissed.

## **BACKGROUND**

### A.    **The Home Affordable Modification Program**

HAMP was a program launched in 2009 by the U.S. Treasury Department as part of an initiative to make mortgage payments more affordable for certain at-risk homeowners through a combination of interest-rate reductions, term extensions, forbearing on collecting portions of the loan principal, and other accommodations. *See generally In re Bank of Am. HAMP Contract*

*Litig.*, 2013 WL 4759649, at *1-2 (D. Mass. Sept. 4, 2013). The program operated by having servicers perform "a preliminary evaluation" of the borrower's eligibility, offer a "Trial Period Plan" "[i]f the preliminary evaluation indicated the borrower was eligible for a HAMP modification," and give the borrower the opportunity to make the modification permanent by making the trial payments, "provid[ing] any required financial documents, and meet[ing] other stated conditions" necessary to qualify. *Id.* at *1. Bank of America has modified over 100,000 loans under HAMP.[2] Over a million more borrowers have received modifications under other programs Bank of America has offered.[3]

**B.    Allegations of the Complaint[4]**

Plaintiff alleges that he began "experiencing financial hardship" in 2009 and contacted Bank of America, his mortgage servicer, "requesting a HAMP modification." Compl. ¶ 36. "On or about December 29, 2009," he alleges, he was advised to "refrain from making his regular mortgage payments" because "if they paid their regular mortgage payment, they could not be eligible for a HAMP modification" *Id.* at ¶ 37. Plaintiff defaulted on his loan in hopes of qualifying. *Id.* at ¶ 39.

About a month later, "on or about February 11, 2010," Plaintiff alleges having conversations with another unidentified "BOA employee" about his application *Id.* at ¶ 41. He alleges that he was told then, and on other unspecified "subsequent" occasions, that the

---

[2] *See* U.S. Dep't of Treasury, MAKING HOME AFFORDABLE: PROGRAM PERFORMANCE REPORT—THIRD QUARTER 2016, available at *https://www.treasury.gov/initiatives/financial-stability/reports/Documents/3Q16%20MHA%20Report%20Final.pdf*.

[3] Bank of America's modification record is disclosed in its annual 10-K filings, available at *https://www.sec.gov/cgi-bin/browse-edgar?action=getcompany&CIK=0000070858&type=10-K*.

[4] The below account is based solely on the allegations in the Complaint, which Bank of America has not verified. Bank of America naturally reserves its right to contest any of Plaintiff's factual claims in the event this matter were to proceed beyond the pleading stage.

documents he had submitted to qualify for a loan modification were "not current." ¶¶ 41, 62. Plaintiff alleges that this statement was false without explaining the basis for such a belief.

In March 2010, Plaintiff alleges that a Bank of America representative named "Roger" "verbally informed" Plaintiff that he was "approved" for a trial loan modification. *Id*. at ¶ 46. Plaintiff alleges that "[t]his statement was false" because "the application wasn't approved." *Id*. Plaintiff neither elaborates concerning this allegation nor supplies any facts that would account for his belief that he was told he was approved for a trial modification, but wasn't really.

Plaintiff claims that he made three trial payments on unspecified dates in 2010 of more than $1200. *Id*. at ¶ 49.   But Plaintiff claims that making the trial payments damaged him because "BOA placed those payments in an unapplied account" instead of crediting them to the loan. *Id*. at ¶ 50. Plaintiff neglects to mention that this is exactly how the Treasury Department instructed servicers to process trial payments. *See*, *e.g.*, MAKING HOME AFFORDABLE PROGRAM HANDBOOK FOR SERVICERS OF NON-GSE MORTGAGES v5.1 129 (May 26, 2016) (requiring servicers to hold HAMP trial period payments in a "custodial account" until "the total of the reduced payments held as 'unapplied funds' is equal to a full PITI [principal, interest, tax and insurance] payment"); U.S. DEP'T OF TREASURY, HAMP SUPPLEMENTAL DIRECTIVE (SD) 09-01 at 18 (Apr. 6, 2009) (providing for trial payments to be held "as 'unapplied funds'" until "equal to a full PITI payment").[5] Plaintiff also suggests (while stopping short of alleging outright) that his trial payments were applied to "inspection and other [unspecified] fees," which contradicts his allegation that the payments were placed "in an unapplied account." *Compare* Compl. ¶ 47 *with* ¶ 50. Either they were applied to amounts owed by the Plaintiff, or they weren't. Plaintiff refuses to say which.

---

[5] Available at https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/sd0901.pdf.

Plaintiff alleges that all of the statements made to him by Bank of America representatives were made "not for the purpose of processing Plaintiff's application in good faith, but instead for the specific purpose of frustrating the HAMP application process to ensure a modification was ultimately declined, resulting in foreclosure." *Id.* at ¶ 43. But despite alleging (or at least insinuating) that his application was "ultimately declined," Plaintiff also purports to allege, "upon information and belief," that Bank of America "profited by using Plaintiff's HAMP application to make false claims for incentive payments to the United State [*sic*] Department of Treasury." Compl. ¶ 57. Plaintiff does not specify any actual facts upon which this "belief" is based, but the Court can take judicial notice of the fact that the Treasury Department's incentive payments for HAMP modifications are only for "completed modifications," not for modifications that were "declined." SD 09-01 at 23.

## LEGAL STANDARD

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6) if it fails to "contain sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To meet this standard, Plaintiffs must make "allegations plausibly suggesting (not merely consistent with)" a valid claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Because Plaintiff's claim sounds in fraud, FED. R. CIV. P. 9(b) requires the complaint to allege "(1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." *Miccosukee Tribe of Indians of Fla. v. Cypress*, 814 F.3d 1202, 1212 (11th Cir. 2015).

## ARGUMENT

## I. PLAINTIFF'S CLAIM IS BARRED BY THE BANKING STATUTE OF FRAUDS

Plaintiff purports to state a claim for fraud against Bank of America based on statements that were made during discussions related to a HAMP loan modification.  However, Florida law prohibits a debtor from pursuing "an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." Fla. Stat. § 687.0304(2).  The term "credit agreement" is used broadly in this context to mean "an agreement to lend or forbear repayment of money, goods, or things in action, to otherwise extend credit, or to make any other financial accommodation." Fla. Stat. § 687.0304(1)(a).  This provision has been dubbed a "new" statute of frauds for banking and credit agreements.  *See Dixon v. Countrywide Home Loans, Inc.*, 710 F. Supp. 2d 1325, 1330 (S.D. Fla. 2010) (*citing Brenowitz v. Centr. Nat. Bank*, 597 So. 2d 340, 342 (Fla. 2d DCA 1992)).  In addition to enforcing the general requirement of writing, courts have held that agreements that fall under a statute of frauds cannot be orally modified. *Locke v. Wells Fargo Home Mortg.*, No. 10-60286-Civ, 2010 U.S. Dist. LEXIS 126140, at *10 (S.D. Fla. Nov. 30, 2010) (*citing Wharfside at Boca Pointe, Inc. v. Superior Bank*, 741 So. 2d 542, 545 (Fla. 4th DCA 1999)).

Section 687.0302 was enacted to "protect lenders from liability for actions or statements a lender might make in the context of counseling or negotiating with the borrower which the borrower construes as an agreement, the subsequent violation of which is actionable against the lender." *Dixon*, 710 F. Supp. 2d at 1330 (internal citations omitted).  Indeed, the legislature passed the statute in an effort to "avoid misunderstandings, facilitate open communications, and improve certainty and stability in credit transactions." *Reese v. JPMorgan Chase & Co.*, 686 F.

Supp. 2d 1291, 1304 (S.D. Fla. 2009) (*citing* House of Representatives of Florida, Comm. on Commerce, Final Staff Analysis & Economic Impact Statement on H.B. 878, at 1 (1989)).

In a recent case, homeowners defending a foreclosure action on their home moved to enforce the oral terms of a purported settlement agreement discussed at mediation prior to trial. *Wells Fargo Bank, N.A. v. Richards*, 226 So. 3d 920 (Fla. 4th DCA 2017). The trial court granted the motion after the Bank proffered no contradicting evidence of the terms allegedly negotiated at the mediation. *Id*. The Fourth District reversed because the oral modification of a credit agreement is precluded by both Florida's Statute of Frauds (Fla. Stat. § 725.01) and Florida's Banking Statute of Frauds (Fla. Stat. § 687.0304(2)). In its holding, the Court found that the motion to enforce "improperly sought to establish the validity of the oral agreement and sidestep the statutes" *Id*.

Courts have held that the statute bars not only claims for breach of contract, but also other derivative claims that are premised on oral promises to lend, including claims for promissory estoppel, negligent misrepresentation, and fraud. For example, in *Coral Reef Drive Land Development, LLC v. Duke Realty Limited Partnership*, the Third District Court of Appeal found the banking statute of frauds barred a claim for fraud in the inducement. 45 So. 3d 897, 899 (Fla. 3d DCA 2010). There, a commercial borrower was unable to make its loan payments and facing foreclosure when the lender allegedly made several statements indicating a willingness to forbear from collecting on the default. *Id*. at 900–01. Based on this, the borrower brought claims for fraudulent inducement and promissory estoppel, which the court rejected as attempts to enforce an oral agreement—barred by the banking statute of frauds. *Id*. at 903.[6]

---

[6] *See also 940 Lincoln Rd. Assocs. LLC v. 940 Lincoln Rd. Enters*., No. 3D16-2748, 2017 Fla. App. LEXIS 19740, at *5 (Dist. Ct. App. Dec. 27, 2017) (finding that the statute of frauds may not be avoided by a suit for fraud based on oral representations); *Prof'l Vending Servs. v.*

In short, under section 687.0304, "an action for damages cannot be maintained on the ground of fraud in refusing to perform the contract, even though the defendant at the time of the making of the oral contract may have had no intention of performing it." *Attanasio v. Excel Dev. Corp.*, 757 So. 2d 1253, 1255 (Fla. 4th DCA 2000). "To hold otherwise would allow every failed breach of contract claim to morph into a negligent misrepresentation or FDUTPA claim." *Dixon*, 710 F. Supp. 2d at 1331.

Here, Plaintiff purports to assert a claim for fraud against Bank of America based on statements that were made during discussions related to a HAMP loan modification and Bank of America's alleged refusal to perform on a "verbal[]" agreement. *See* Compl., *passim*. Each of the allegations involves a communication that allegedly occurred in the context of a request for financial accommodation. *Id.* Plaintiff acknowledges that he never entered into a signed, written agreement for a HAMP modification. *See e.g.* Compl. at ¶ 46 (acknowledging no "written verification"). Indeed, each alleged instance of fraud involves an oral statement. *See* Compl. at ¶¶ 37 (oral statement regarding default), 41 (oral statement regarding completion of the agreement), 46 (oral statement about HAMP approval), 47–48 (omission involving application of trial payments) and 52–53 (omissions involving inspection charges). Because his allegations of fraud are derivative of a credit agreement that was never reduced to writing and signed by both parties, Plaintiff's fraud claim is barred by the banking statute of frauds. *See Dixon*, 710 F. Supp. 2d at 1330–31; *MUNB Loan Holdings*, 2012 U.S. Dist. LEXIS 192090, at *7–10 Attanasio*, 757 So. 2d at 1255.

---

*Firestone Fin. Corp.*, No. 15-61852, 2016 U.S. Dist. LEXIS 190368, at *6-7 (S.D. Fla. Apr. 29, 2016) (negligent misrepresentation and promissory estoppel); *University Creek Associates II, Ltd. v. Boston American Financial Group, Inc.*, 100 F. Supp. 2d 1345, 1351 (S.D. Fla. 2000) (promissory estoppel).

## II. PLAINTIFF'S CLAIM IS TIME-BARRED.

On its face, Plaintiff's fraud claim stems from statements that occurred between December 29, 2009 and March 24, 2010. *See* Compl. at ¶¶ 37, 41, and 46. Florida law imposes a four-year limitations period for any "legal or equitable action founded on fraud." Fla. Stat. § 95.11(3)(j). The limitations period begins when "the fraud is discovered, or when by the exercise of reasonable diligence it might have been discovered." *Westchester Corp. v. Peat, Marwick, Mitchell & Co.*, 626 F.2d 1212, 1217 (5th Cir. 1980); *accord, e.g.*, *Jeunesse, LLC v. Lifewave, Inc.*, 2015 WL 4911349, at *3 (M.D. Fla. Aug. 17, 2015).

Here, Plaintiff contends that he was advised on December 29, 2009, "to refrain from making his regular mortgage payments" as a condition for HAMP eligibility. *See* Compl. at ¶ 37. Once he submitted a HAMP application, Plaintiff alleges that on February 11, 2010, he was advised that all of the financial "documents were incomplete and needed more financial documentation." *See* Compl. at ¶ 41. Plaintiff alleges that similar statements were made during other unspecified subsequent phone calls. *Id.* Plaintiff also claims that he was informed on March 24, 2010, that he was approved for a trial plan. *See* Compl. at ¶ 46. Plaintiff then complains about "property inspections" between 2008 and 2012 and a May 7, 2010 foreclosure. *Id.* at ¶¶ 49, 52. All of these things occurred more than four years before Plaintiff brought this lawsuit on October 31, 2017.[7]

Notably, Plaintiff does not make *any* allegations that the four-year limitations period should be tolled or that his claims should be deemed to have accrued at some later date on "discovery rule" grounds or otherwise. *See* Compl., *passim.* Nor could he. The alleged "frauds" all concern matters of public knowledge; if Plaintiff had any viable claim of fraud, there is no

---

[7] The *Torres* lawsuit from which Plaintiff's claim was previously dismissed and severed (*see supra* n.1) was also filed more than four years after these events, on June 27, 2017. *See Torres*, No. 17-1534, ECF No. 1.

reason he could not have discovered the basis for such a claim when the relevant statements were made. *See e.g. Westchester Corp.*, 626 F.2d at 1217.  For example, Plaintiff's first alleged "misrepresentation" is a statement that "if they paid their regular mortgage payment, they could not be eligible for a HAMP modification." *See* Compl. at ¶ 37. HAMP's eligibility requirements are not secret; if he was told anything inconsistent with them, he could have discovered this for himself back when the statement was made by consulting the guidelines posted on the Treasury Department's web site. *See* SD 09-01, *supra*. Plaintiff next alleges that he submitted all "the requested supporting financial documents" but was "falsely informed" in February 2010 that the package was incomplete. Compl. ¶ 41. Again, there is no reason Plaintiff could only have discovered in 2017 what documents he submitted.

Plaintiff's ability to discover the basis for his claims as soon as the relevant statements were made defeats any attempt to get around the statute of limitations.  *See e.g. Westchester Corp.*, 626 F.2d at 1217. And indeed, Plaintiff admits that *other* borrowers had managed to file lawsuits against Bank of America challenging its handling of HAMP modifications years earlier. *See* Compl. ¶ 29–32. Plaintiff could have done likewise. This Court should dismiss his complaint as time-barred.

### III. PLAINTIFF'S CLAIM IS BARRED AS PLAINTIFF'S FRAUD CLAIM IS NOT INDEPENDENT FROM A BREACH OF CONTRACT CLAIM

Plaintiff's one-count Complaint purports to assert a claim for fraud against Bank of America based on statements that were made during discussions related to a HAMP loan modification and Bank of America's alleged refusal to perform on an alleged (oral) agreement. Compl. ¶ 46. But Florida law is clear that "a cause of action for fraud is barred where the fraud alleged pertains to the performance of a contract." *Am. Color Graphics, Inc. v. Brooks Pharm., Inc.*, 2006 U.S. Dist. LEXIS 11698. *See Minh Le v. Mortgage*, No. 14- 0785, 2015 U.S. Dist.

LEXIS 183712, at *14 (M.D. Fla. Jan. 12, 2015) (noting that fundamental contract principles continue to bar a tort claim where the offending party has committed no breach of duty independent of a breach of its contractual obligations).

For a party in contractual privity to bring a valid tort claim, the party must show the tort is independent of any breach of contract. *Freeman v. Sharpe Res. Corp.*, No. 12- 1584, 2013 U.S. Dist. LEXIS 69681, at *12 (M.D. Fla. Apr. 3, 2013).  Fraud is an independent tort only if it "occurs prior to the contract and the standard of truthful representation placed upon the defendant is not derived from the contract." *Lehman Bros. Holdings, Inc. v. Hirota*, No. 06-2030, 2007 U.S. Dist. LEXIS 36818, at *10 (M.D. Fla. May 21, 2007). But a plaintiff cannot convert a contract claim into a tort claim by alleging that the defendant made a "misrepresentation" about performing under the contract. *E.g.*, *Badger Auctioneers, Inc. v. Ali*, No. 16- 0572, 2017 U.S. Dist. LEXIS 127437, at *9 (M.D. Fla. Aug. 10, 2017); *Genron Enters. v. Metecno Panel Sys.*, No. 05-01765, 2006 U.S. Dist. LEXIS 19867, at *15 (M.D. Fla. Apr. 17, 2006).

Plaintiff's fraud claims here amount to nothing more than that. Plaintiff accuses Bank of America of entering into a "verbal[]" trial modification agreement with him while having "no intention" of performing the agreement. Compl. ¶ 46. Plaintiff's core grievance—being "declined" for a permanent modification (*id*. at ¶ 43)—likewise entails nothing more than the alleged non-performance of an alleged oral agreement that if trial payments are made, then "the homeowner must be offered a permanent modification." *Id*. at ¶ 12.[8]

The handful of misrepresentations Plaintiff claims to have occurred prior to this alleged agreement are not governed by any "standard of truthful representation placed upon the

---

[8] Plaintiff's claims of "fraudulent . . . inspection fees" (*id*. at ¶ 52) are likewise a matter of contract, only here the relevant contract is the underlying mortgage rather than any modification agreement.

defendant [that] is not derived from the contract." *Lehman Bros.*, *supra*. To the contrary, "Florida courts have recognized that generally, the relationship between a bank and its borrower is that of creditor to debtor, in which parties engage in arms-length transactions, and the bank owes no fiduciary responsibilities." *Wilson v. Everbank, N.A.*, 77 F. Supp. 3d 1202, 1223 (S.D. Fla. 2015) (internal quotation marks omitted); *see also*, *e.g.*, *Givens v. Saxon Mortg. Servs.*, No. 13-0245, 2014 U.S. Dist. LEXIS 74395, at *28-31 (S.D. Ala. May 30, 2014) (rejecting fraud claim alleging misrepresentations in HAMP application process based on "[a]bundant authority from across the country" that a mortgage servicer "does not owe the borrower a general fiduciary duty"). That principle is particularly apropos here, where Plaintiff complains about how Bank of America "advised" him and claims misrepresentations as to the contents of publicly available documents Plaintiff could have consulted for himself (the Treasury Department's HAMP guidelines). Compl. ¶ 37; *see*, *e.g.*, *Bowdish v. Regions Bank*, No. 11-0259, 2012 U.S. Dist. LEXIS 77840, at *16-17 (N.D. Ga. June 5, 2012) ("In the absence of a special relationship or confidence between parties, a matter equally open to the observation of all parties . . . will generally not support a claim for fraud.").

In brief, as Plaintiff alleges no "fraud" other than the breach of an alleged oral agreement and purported "advi[c]e" given completely outside the context of any kind of fiduciary relationship, Plaintiff is barred from pursuing a claim for fraud.

### IV. PLAINTIFF FAILS TO PLEAD THE CLAIM OF FRAUD.

Plaintiff fails to plead his claim of fraud, much less so to plead it with the particularity required by Rule 9(b).[9] Here, the Complaint alleges most of the elements only in conclusory,

---

[9] "The 'essential elements' of common law fraud under Florida law are: '(1) a false statement of fact; (2) known by the person making the statement to be false at the time it was made; (3) made for the purpose of inducing another to act in reliance thereon; (4) action by the other person in reliance on the correctness of the statement; and (5) resulting damage to the other person.'" *State*

self-serving terms and does not describe the offending statements with nearly enough particularity to comply with Rule 9(b).

A.     **Plaintiffs Fail to Plead Misrepresentations of HAMP Requirements.**

The first alleged "false statement[] of fact" is the alleged statement made by a "BOA loan representative, Maria," to Plaintiff that "if they paid their regular mortgage payment, they could not be eligible for a HAMP modification." Compl. ¶ 37. Plaintiff alleges that this statement is false because "representative, Maria, omitted the fact that eligibility was available for HAMP to borrowers if default was reasonably foreseeable." *Id*. HAMP *requires* servicers to confirm the "loan is delinquent" or default is "imminent" in order to qualify borrowers for HAMP. *See* SD 09-01 at 1-4; ECF No. 12 at 13 & n.19. A statement that a borrower must be "past due" on his loan to qualify for HAMP is therefore true as to any borrower who is not facing an imminent default.

Plaintiff fails to allege that he was facing an imminent default. If Plaintiff was not facing an imminent default, then the statement attributed to Maria in the Complaint is literally true: the only way to qualify for HAMP was to be past due. *Id*. at ¶ 37. (And if he *was* facing an imminent default, then his deliberate default in an effort to qualify for a modification left him in no worse place than he would have been in otherwise.)

Even setting this aside, Plaintiff cannot pursue a fraud claim based on any alleged misrepresentation of HAMP's requirements, because HAMP's requirements were *public knowledge*. As noted above, the qualification requirements for HAMP, including the default-or-imminent-default requirement, were publicly posted on the Treasury Department's web site for all to see. *See* SD 09-01 at 1-4. It is impossible, as a matter of law, to sustain a fraud claim as to

---

*Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc*., 427 F. App'x 714, 720 (11th Cir. 2011).

representations of information that are just as accessible to the plaintiff as they are to the defendant. *See, e.g., Greenberg v. Miami Children's Hosp. Research Inst., Inc.*, 264 F. Supp. 2d 1064, 1073 (S.D. Fla. 2009) ("[T]he facts asserted as fraudulently concealed were accessible to the Plaintiffs. A patent becomes public knowledge when issued and Plaintiffs could have undertaken due diligence to uncover the facts. . . .").

Furthermore, "[a] defendant's omission to state a material fact is proscribed only when the defendant has a duty to disclose." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1206 (11th Cir. 2001). And there is no "duty to disclose" here, because "a duty to disclose[] a fact arises only when the parties are in a fiduciary relationship," *Cola v. Allstate Ins. Co.*, 131 F. App'x 134, 136 (11th Cir. 2005), and there is no fiduciary relationship between a borrower and lender in an arm's-length transaction. *E.g., Brake v. Wells Fargo Fin. Sys. Fla.*, 2011 U.S. Dist. LEXIS 146875, at *16 (M.D. Fla. Dec. 5, 2011) ("absent a special pre-existing relationship, the relationship between a bank and its borrower is that of creditor to debtor, in which parties engage in arms-length transactions, and the bank owes no fiduciary duty"); *PNC Bank, N.A. v. Lucmaur, LLC*, 2014 U.S. Dist. LEXIS 156709, at *11, 15 (M.D. Fla. Oct. 14, 2014) (finding that plaintiffs did not allege "sufficient facts to establish the special circumstances required to transform the ordinary lender/borrower relationship into one in which [the lender] assumed a duty to disclose material facts to them," and therefore failed to plead fraud by omission). It was not Bank of America's duty to give Plaintiff legal advice on how to qualify for HAMP.

Unsurprisingly, courts across the country have rejected identical claims as insufficient to plead an actionable misrepresentation. *E.g., Robinson v. Wells Fargo Bank, N.A.*, 576 F. App'x 358, 363 (5th Cir. 2014) ("Nor have [plaintiffs] alleged that Wells Fargo's statement that [plaintiffs] needed to be delinquent in order to qualify . . . was false or that they would have been

eligible for HAMP absent default."); *Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 797 (D. Md. 2013) ("Plaintiffs' allegations do not support a plausible inference that it was untrue, misleading, or deceptive to say that Plaintiffs had to be in default . . . to be considered for a loan modification"); *Whatley v. Bank of Am., N.A.*, 2012 WL 5906709, at *3 (E.D. Cal. Nov. 26, 2012) ("Plaintiff again fails to demonstrate that the statement itself was false. In fact, it seems reasonable for Defendants to require delinquency before modifying a loan."); *Farasat v. Wells Fargo Bank, N.A.*, 913 F. Supp. 2d 197, 205 (D. Md. 2012) (no "misrepresentation" when plaintiff "was told that he needed to miss payments, as contemplated by the HAMP guidelines").[10]

Thus, even under basic Rule 8 pleading requirements, Plaintiff hasn't said enough about the statements made to him to "plausibly suggest[]" an actionable misstatement, or any kind of false statement at all. *Twombly*, 550 U.S. at 557. Under the heightened Rule 9(b) pleading requirements, it isn't even a close question. For one thing, Plaintiff does not describe the "precise statement." *Miccosukee*, *supra.* The only description of the statement is Plaintiff's own paraphrase of it. As noted above, Plaintiff's paraphrase does not articulate with nearly enough specificity what was actually said. For example, Plaintiff doesn't specify whether he was told that *nobody* could qualify for HAMP without being in default or whether *he specifically* would not qualify for HAMP without being in default, which are two entirely different statements.

Plaintiff does not sufficiently allege the other elements of the fraud claim, either. Plaintiff fails to plead "what the Defendants gained by the alleged fraud." *Miccosukee*, *supra.* The conclusory allegation that "BOA profited by retaining Plaintiff's trial payments for profit" (Compl. ¶ 51) cannot be credited, as it is contradicted by Plaintiff's other allegations that the trial

---

[10] *See also*, *e.g.*, *Traynor v. Chase Home Fin., L.L.C.*, 2013 WL 704932, at *12 (N.D. Tex. Feb. 27, 2013); *Lyons v. Bank of Am., N.A.*, 2011 WL 6303390, at *5 (N.D. Cal. Dec. 16, 2011).

payments remained in an "unapplied account." *Id.* at ¶ 48. Plaintiff's claims that Bank of America "profited" by receiving "incentive payments" from the Treasury Department, made on "information and belief" without specifying any facts on which this "belief" is formed, need not be credited since it is negated by Plaintiff's own allegation that his modification was "declined"—and there are no incentive payments for declined modifications. Compl. ¶¶ 43, 57; SD 09-01 at 23.

Next, Plaintiff presents no factual basis whatsoever for his supposition that "representative Maria knew the statement was false when made and intentionally omitted that only eminent [*sic*] default was required for HAMP eligibility." *Id.* ¶ 38. This self-serving say-so falls short of the (already permissive) pleading requirements of Rule 9(b) as to state of mind, since Plaintiff alleges no facts plausibly suggesting that they are in any position to know what "Maria" intended. *See, e.g., In re Sahlen & Assoc., Sec. Litig.*, 773 F. Supp. 342, 358 (S.D. Fla. 1991) ("Although Rule 9(b) provides that the state of mind of a defendant in a fraud case may be averred generally, courts have required plaintiffs nevertheless to supply some factual basis in support of their allegation of intent.").

Next, Plaintiff pleads no facts to indicate that the statements were "made for the purpose of inducing another to act in reliance thereon." *State Farm*, 427 F. App'x at 720.  The pleaded facts indicate nothing more than that Plaintiff *chose* to default in hopes of qualifying for relief. That is not "induc[ement]" by the bank.[11]

---

[11] *See, e.g., Fevinger v. Bank of Am., N.A.*, 2014 WL 3866077, at *5 (N.D. Cal. Aug. 4, 2014) ("The core of [plaintiff's] pleadings on this cause of action remains the contention that [Bank of America] told her she could obtain a loan modification by going late on her payments. This does not rise above the level of encouragement. The choice to pay or not to pay remained with [plaintiff].") (internal quotation marks omitted); *Bing Ting Ren v. Wells Fargo Bank, N.A.*, 2013 WL 2468368, at *3 (N.D. Cal. June 7, 2013) ("[Defendant] told Plaintiff that she could enter the loan modification process by going late on her payments, but that was a choice only Plaintiff could make.").

Finally, absent are any facts indicating "action" by Plaintiff "in reliance on the correctness of the statement," or any "resulting damages." *Id.* Plaintiff's allegation that he went into default to qualify for HAMP does not reflect any detrimental reliance or harm. If Plaintiff was facing an imminent default, then his default does not reflect "reliance" on statements made by Bank of America. Conversely, if Plaintiff was *not* facing an imminent default, then he did not qualify for HAMP in the first place, and could not have been "injured" by his failure to receive something for which they did not qualify. *See also McClung v. MERS, Inc.*, 2012 WL 1642209, at *8-9 (N.D. Ala. May 7, 2012) (finding that plaintiffs "have provided no more than a conclusory allegation that they incurred injury" stemming from defendant's alleged misrepresentation that "plaintiffs would be eligible for a modification if they were in default for ninety days.").

## B.  Plaintiff Fails to Plead False Statements About The HAMP Application.

Plaintiff alleges that he was "falsely informed by s BOA employee by phone that their documents were incomplete and needed more financial documentation.'" Compl. ¶ 41. Again, Plaintiff does not actually substantiate his claim that this alleged statement was false, and fails in any event to describe it with the particularity required by Rule 9(b).  Regardless, "[t]he sole fact that defendants asked the [plaintiff] to resubmit his applications is not enough to plausibly allege that defendants made false representations, knew the representations were false, and intended to deceive."[12]

---

[12] *Temple v. Bank of Am., N.A.*, 2015 U.S. Dist. LEXIS 1444660, at *6 (N.D. Cal. Oct. 23, 2015) (rejecting "conclusory allegations about intent to deceive and why the statements were false"); *see also*, *e.g.*, *U.S. Bank, N.A. v. Flores*, 2014 U.S. Dist. LEXIS 91395, at *14 (S.D. Tex. July 1, 2014) (allegations that plaintiff "'was required to submit certain paperwork and when she did, she would either hear nothing from Wells Fargo, or she would be asked to resubmit the same paperwork for some unknown reason'" "fails as a claim for fraud").

This allegation also fails to comply with Rule 9(b). Plaintiff attributes the allegedly false statement to multiple unnamed Bank of America employees on unspecified dates. Compl. ¶ 41. This level of generality is fatal. *See*, *e.g.*, *Azar v. Am. Home Mortg. Serv., Inc.*, 2010 WL 5648880, at *4 (M.D. Fla. July 16, 2010) (dismissing fraud claim for failure to specify "which agents or representatives of Defendant [] made the statements"). Plaintiff tries to get around Rule 9(b) by claiming that the names of employees he spoke to are "within the exclusive possession of the Defendant" (Compl. ¶ 41 n.5), but the Eleventh Circuit has rejected such attempts "to learn the complaint's bare essentials through discovery." *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301 (11th Cir. 2002). "When a plaintiff does not specifically plead the minimum elements of their allegation, it enables them to learn the complaint's bare essentials through discovery and may needlessly harm a defendants' goodwill and reputation by bringing a suit that is, at best, missing some of its core underpinnings, and, at worst, are baseless allegations used to extract settlements." *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1313 (11th Cir. 2002).

Additionally, Plaintiff fails to allege that the purportedly false statement was "known by the person[s] making the statement to be false at the time it was made." *State Farm*, 427 F. App'x at 720. Plaintiff does not state how *he* is in a position to know what Bank of America employees supposedly knew. He attempts to make up for this deficiency by citing a series of inflammatory declarations filed in another lawsuit, signed by individuals claiming to have been former employees of Bank of America with stories about their alleged mistreatment of borrowers. *See* Compl. Ex. 2-6.[13] Plaintiff cannot carry his burden of pleading ill intent merely

---

[13] Bank of America established in that lawsuit that the stories in these declarations were patently false. For example, the declarants didn't even tell the truth about where they worked. *See In re Bank of Am. HAMP Contract Litig.*, No. 10-2193 (D. Mass.) ECF No. 221 at 10. Of course, the

by piggybacking on (discredited) claims made in an unrelated litigation. "[B]lindly relying" on someone else's investigation does not comport with a counsel's pre-filing "duty to conduct a reasonable inquiry to determine that the declarations were 'well-grounded in fact.'" *Sec. Farms v. Int'l B'hood of Teamsters*, 124 F.3d 999, 1017 (9th Cir. 1997). It follows that they are not entitled to be credited at the Rule 12(b)(6) stage, either.  Indeed, such reliance on allegations from "entirely unrelated legal controversies" is properly treated as an "immaterial and prejudicial" attempt "to 'muddy the waters'" and can be stricken under Rule 12(f). *Glass v. Anne Arundel Cnty.*, 2013 U.S. Dist. LEXIS 36427, at *39 (D. Md. Mar. 14, 2013); *accord, e.g., Al-Rayes v. Willingham*, 2016 U.S. Dist. LEXIS 143225, at *3-4 (M.D. Fla. Oct. 17, 2016) (dismissing fraud claim predicated on allegations from "unrelated lawsuits").

In any event, there is no connection between the declarations and Plaintiff's claims. None of the declarants described any dealings with the Plaintiff and Plaintiff does not describe any dealings with the declarants. *See* Compl. generally.  At least one other court has declined to credit these very same declarations on this basis at the Rule 12(b)(6) stage "because by the plaintiffs' own admission the declarations were made prior to the allegedly deceitful conduct in this case and in an entirely unrelated litigation," and because the plaintiffs pleaded no "causal link between their claims and the statements made by Bank of America employees in other litigation." *Trionfo v. Bank of Am., N.A.*, 2015 U.S. Dist. LEXIS 116888, at *19 (D. Md. Sept. 2, 2015). If the legal standard were otherwise, then a single unproven, inflammatory statement made in the course of any lawsuit, anywhere, could be exploited by every plaintiff, everywhere,

---

truth or falsity of these declarations is beside the point for purposes of this motion under Rule 12(b)(6)—all that matters here is whether the incendiary claims in the exhibits are entitled to be credited as well-pled factual allegations, and they are not.

to get past a Rule 12(b)(6) motion despite having no plausible claims about their own case. That cannot be the law.

## C.     Plaintiff Fails to Plead He Was Given False Trial Plan Approvals.

Plaintiff next accuses Bank of America of making the "false" statement that he was "approved" for a trial plan, alleging that "[t]his statement was false as the application wasn't approved." Compl. ¶ 46. Plaintiff pleads no actual facts suggesting that the statement was false or supporting his naked claim that his trial plan wasn't really approved. But even if this statement were somehow construed as false, it suffers from the same infirmities as Plaintiff's other fraud allegations in terms of Rule 9(b) and the other elements of the claim.

Plaintiff does not plead any act of reliance on what he was told. Making trial payments is not reliance as a matter of law, because Plaintiff was *already* obligated to make even higher loan payments under the terms of their original loan documents. *See*, *e.g.*, *Pennington v. HSBC Bank USA, N.A.*, 493 F. App'x 548, 557 (5th Cir. 2012) ("TPP payments [do not] constitute detrimental reliance because they were just applied to the loan").[14]

Plaintiff pleads no damages "resulting" from the bank's statement. *State Farm*, *supra*. Allegations of foreclosure and "the loss of future equity" (Compl. ¶ 58) do not describe any harm

---

[14] *See also*, *e.g.*, *Senter v. JPMorgan Chase Bank, N.A.*, 810 F. Supp. 2d 1339, 1346-48 (S.D. Fla. 2011) (finding HAMP trial payments were "preexisting obligations" under the terms of the original loan, and thus not a legal "detriment"); *Ortiz v. Am.'s Servicing Co.*, 2012 WL 2160953, at *6-7 (C.D. Cal. June 11, 2012) ("making payments . . . is insufficient to establish the required detrimental reliance, because plaintiff was already legally obligated to make payments under the loan"); *Bohnhoff v. Wells Fargo Bank, N.A.*, 853 F. Supp. 2d 849, 857 (D. Minn. 2012) (no detrimental reliance from trial payments because plaintiff "had a legal duty to make payments on the [original] Note"); *Nicdao v. Chase Home Fin.*, 839 F. Supp. 2d 1051, 1071 (D. Alaska 2012) ("Plaintiff was already obligated to pay those amounts (if not more) under the [original] Note."); *Osmond v. Litton Loan Serv., LLC*, 2011 WL 1988403, at *3 (D. Utah May 20, 2011) (no reliance because plaintiff "does not demonstrate that she did something that she would not have done if Defendants had not made a promise").

"resulting" from anything Bank of America did. Those are the consequences of Plaintiff's own default. As one court held in rejecting an identical allegation:

> Plaintiff . . . describes his damages as the "loss of the subject property [and] future use and enjoyment of that property. . . ." The problem with these allegations is that, by the time Plaintiff was told he could submit documentation . . . , he had already been in default on his loan payments for many months. . . . As such, it was not the alleged misrepresentation that plausibly led to Plaintiff's damages; it was his own default.

*McReynolds v. HSBC Bank USA*, 2012 WL 5868945, at *4 (N.D. Cal. Nov. 19, 2012). The only scenario in which such damages could be attributed to any conduct by Bank of America is if Plaintiff qualified for a permanent loan modification but was wrongfully denied. And yet Plaintiff does not make that claim *even in conclusory terms*. Plaintiff *nowhere* alleges that his apparent failure to obtain a permanent loan modification was erroneous, much less fraudulent. Similarly, his theory that he was injured to the tune of "the costs for sending his HAMP applications" (Compl. ¶ 69) would not have been a detriment at all if Plaintiff had managed to qualify for HAMP, and thus it is not an injury absent well-pleaded facts to indicate that their failure to qualify was the result of a misstatement by Bank of America, as opposed to the actual qualification requirements.

Further, Plaintiff fails to allege "what the Defendants gained by the alleged fraud." *Miccosukee*, *supra*. Plaintiff's entire (unfounded) theory of liability is that Bank of America was using HAMP to reap fraudulent "profit" and redirect trial payments to "fraudulent inspection [] fees." Compl. ¶¶ 47, 51. Plaintiff pleads no facts suggesting that either occurred—and, to the contrary, pleads facts conceding the exact opposite—that his trial payments were placed in an "unapplied account." *Id.* at ¶ 48.  Indeed, Plaintiff fails to allege that any of his trial payments actually *were* applied to any fees—he just alleges the bank took the payments so that it "could" do so. *Id.* ¶ 47. This is far short of the requisite factual showing.

**D.      Plaintiff Fails to Plead a Fraudulent Omission Regarding His Custodial Account.**

Next, Plaintiff alleges that BOA fraudulently omitted to tell him that his trial plan payments would be held in an unapplied account. Compl. ¶ 48.  This allegation falls short of a claim for fraud for the same reasons Plaintiff's other allegations about omitting details about HAMP's requirements fail to state a claim for fraud—even if the payments were credited, HAMP's requirements providing for the posting of trial payments to custodial accounts were public knowledge, and Bank of America had no special duty to inform Plaintiff as to matters that Plaintiff was fully capable of discovering on his own. *See supra* Part II.A; SD 09-01 at 18. In this case, Plaintiff did not even need to look to the HAMP requirements to discover this, because it is clearly disclosed in his own mortgage agreement. *See* Ex. 1 at 3 ("Lender may accept any payment or partial payment insufficient to bring the Loan current . . . but Lender is not obligated to apply such payments at the time such payments are accepted. . . . Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current.").[15] A lender cannot be deemed to have committed fraud for doing exactly what the loan documents permit it to do.

Further, Plaintiff pleads no facts that allege who omitted to tell him that his trial plan payments would be held in a custodial account, or when this supposed omission occurred. Plaintiff pleads no facts to indicate that any such omission was "made for the purpose of inducing [Plaintiff] to act in reliance thereon." *State Farm*, 427 F. App'x at 720.  Nor does Plaintiff plead facts to indicate any actual "action" by him "in reliance on the correctness of [such a] statement." *Id.* Instead, Plaintiff merely alleges that "as a direct result of relying on BOA's misrepresentations and intentional omissions, . . . Plaintiff's home was foreclosed".

---

[15] "Because the Mortgage is referenced throughout the Complaint, and is undisputed and central to Plaintiffs' claims, the Court may consider it without converting Defendants' Motions [to Dismiss] into motions for summary judgment." *Fontaine v. JP Morgan Chase Bank, N.A.*, 2017 U.S. Dist. LEXIS 139839, at *9 n.5 (M.D. Fla. July 26, 2017) (citing *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. Aug. 16, 2010)).

Compl. ¶ 49. The natural consequence of Plaintiff's own default does not justify an inference of a conspiracy to conceal (publicly posted) program requirements and the terms of Plaintiff's own mortgage.

**E.     Plaintiff Fails to Plead Fraudulent Omission Regarding Inspection Fees.**

Plaintiff alleges that unnamed "BOA employees omitted the fact that the bank was conducting . . . inspections on his home and charging their account inspection fees." Compl. ¶ 53. Plaintiff further alleges that "BOA committed common law fraud upon Plaintiff when the bank requested he make trial payments during the HAMP application and omitted the fact that it had no intention of approving the application and intended to apply some of the funds sent by Plaintiff for trial payments to fraudulent inspection fees." *Id.* at ¶ 54. But Plaintiff nowhere *actually* states that any portion of his trial payments was applied to inspection fees.  As noted, Plaintiff alleges the opposite—that the trial payments were posted to "an unapplied account" (Compl. ¶ 48)—and only speaks in imaginary hypotheticals when it comes to how those payments "could" have been applied. Compl. ¶ 47.

Once again, Plaintiff's "omission" theory is contradicted by his own mortgage agreement, which provides in no uncertain terms that "Lender or its agent may make reasonable entries upon and inspections of the Property" and that "Lender may charge Borrower fees for services performed in connection with Borrower's default," including "property inspection and valuation fees." Ex. 1 at 6-9. Again, Bank of America cannot sensibly be accused of fraud for doing exactly what Plaintiff expressly permitted it to do when he signed his mortgage. And again, it is no surprise that similarly theorized claims have fallen flat.  As one Court ruled:

> Contrary to Plaintiffs' arguments, Defendants disclosed in Plaintiffs' mortgage
> agreements that they had the authority to order property inspections, the cost of which
> would be charged to borrowers' mortgage accounts, in the event of a default. Paragraph
> 14 of each of Plaintiffs' mortgage agreements specifically authorizes the lender to charge
> "fees for services performed in connection with Borrower's default . . . including, but not

limited to, property inspection and valuation fees." . . . Thus, there is no question that when a borrower defaults under the terms of the loan, Defendants have discretion to order property inspections and recover the amount of the property inspection fees from their borrowers in Defendants' discretion. And, even if Defendants abuse their discretion, that does not equate to fraud in the absence of an identifiable misrepresentation or omission.

*Kirchner v. Ocwen Loan Servicing, LLC*, 2017 U.S. Dist. LEXIS 101258, at *21-24 (S.D. Fla.

June 27, 2017)[16]

## V. EVEN SETTING THE OTHER DEFECTS ASIDE, THE COMPLAINT IS AN IMPERMISSIBLE ATTEMPT TO ENFORCE HAMP GUIDELINES.

The Eleventh Circuit has held that plaintiff "lack[] standing to pursue . . . claims insofar as they are premised on an alleged breach of [the defendant's] HAMP obligations," because HAMP itself confers no private right of action. *Miller v. Chase Home Fin., LLC*, 677 F.3d 1113, 1116-17 (11th Cir. 2012). Courts in this Circuit have accordingly rejected all sorts of claims that represent backdoor efforts to sue for violation of HAMP guidelines.[17]

Plaintiff's claim squarely falls into this category, as he accuses Bank of America of "failing to "honor[] its contract with the Federal Government" (Compl. ¶ 16). Not only does

---

[16] *see also, e.g., Ellis v. J.P. Morgan Chase & Co.*, 2016 U.S. Dist. LEXIS 138689, at *27-28 (C.D. Cal. Oct. 5, 2016) (rejecting fraud claim where plaintiffs did not "establish detrimental reliance on [the bank's alleged] concealment of the property inspection fees . . . Said otherwise, plaintiffs [did not] establish both that (i) they were misled by the deceptive terms and (ii) they would not have made payments toward the challenged fees had they known their true nature."); *Tardibuono-Quigley v. HSBC Mortg. Corp. (USA)*, 2017 U.S. Dist. LEXIS 47982, at *40-41 (S.D.N.Y. Mar. 30, 2017) (allegations that plaintiff "should not have been charged for all the property inspections" insufficient to state a claim for fraud).

[17] *See, e.g., Morgan v. PNC Bank, N.A.*, 2014 WL 1922798, at *2 (S.D. Ala. May 14, 2014) ("Significantly, there should be no dispute that Plaintiff submitted an application for a loan modification under HAMP or that her application was denied. *Miller* applies squarely to such a situation, precluding a private cause of action in such circumstances.") (internal quotation marks omitted); *Ligon v. BAC Home Loans Servicing, LP*, 2012 WL 4382339, at *6 (N.D. Ga. Aug. 13, 2012), *report and recommendation adopted in part and rejected in part on other grounds*, 2012 WL 4464946 (N.D. Ga. Sept. 25, 2012) ("HAMP does not give residential mortgage borrowers who engage in the loan modification process a private cause of action based on refusal to grant a permanent loan modification, and 'it is clear that no implied right of action exists' under HAMP") (quoting *Miller*, 677 F.3d at 1116-17).

*Miller* clearly establish that "[t]here is no private right of action under HAMP," "[t]he majority of courts have determined that homeowners are incidental beneficiaries, not intended beneficiaries, of the contract between a participating servicer and the federal government to participate in . . . HAMP" and thus have no standing to claim breaches of the agreement. *Beck v. Bank of Am. Home Loans*, 2016 WL 3460382, at *3 (M.D. Ga. June 21, 2016) (quoting *Stroman v. Bank of Am. Corp.*, 852 F. Supp. 2d 1366, 1374 (N.D. Ga. 2012)).  Plaintiff does not articulate any theory of how an alleged breach of a contract between Bank of America and the government establishes any of the elements of his claim, even if there *were* a scenario in which it were permissible to use common-law claims to end-run Congress's refusal to confer a right of action to sue under HAMP—this Court should not hesitate to grant the requested relief.

## CONCLUSION

For the above-stated reasons, Bank of America respectfully moves this court to dismiss Plaintiff's Complaint with prejudice.

/s/ *James R. Liebler, II*
JAMES R. LIEBLER II
Florida Bar No. 115348
Email: jrlii@lgplaw.com
**LIEBLER, GONZALEZ & PORTUONDO**
Courthouse Tower - 25th Floor
44 West Flagler Street
Miami, FL 33130
Tel: (305) 379-0400
Fax: (305) 379-9626

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2018, I caused a copy of this document to be served through the Court's CM/ECF filing system on the following recipient: John W. Adams Jr., Esq. Adams Law Association, P.A. 1074 Bloomingdale Ave. Valrico, FL 33596 jadams@adamslawassociation.com; paralegal@adamslawassociation.com

/s/ *James R. Liebler, II*