UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SIMON PAREDES,

       Plaintiff,

v.                              Case No: 2:17-cv-594-FtM-38MRM

BANK OF AMERICA, N.A.,

       Defendant.
_____/

## OPINION AND ORDER[1]

This matter comes before the Court on Defendant Bank of America's Motion to Dismiss (Doc. 11). Plaintiff Simon Parades filed his Response in Opposition. (Doc. 12). The matter is ripe for review.

## BACKGROUND

This case concerns Bank of America's allegedly fraudulent loan modification practices while administering a government program designed to alleviate financial hardship after the Great Recession. In May 2003, Parades executed a mortgage and note for a home at 4827 Marine Dr., Cape Coral, FL 33904. (Doc. 1 at ¶ 34). Bank of America eventually became the loan servicer on the account. (Doc. 1 at ¶ 35). In 2009, Parades experienced financial hardship and contacted Bank of America requesting a loan

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

modification under the Home Affordable Modification Program ("HAMP"). (Doc. 1 at ¶ 36). After Bank of America supplied an application, Parades returned it with supporting financial documents. (Doc. 1 at ¶ 40).

On December 29, 2009, Parades contacted Bank of America again and a representative named "Maria" advised him to stop making mortgage payments or "they could not be eligible for a HAMP modification." (Doc. 1 at ¶ 37). Parades alleges this statement was false because default was not required for HAMP eligibility. (Doc. 1 at ¶ 37). However, Parades relied on this statement, did not make his regular mortgage payments, and fell into default. (Doc. 1 at ¶ 39).

Then, on February 11, 2010, Parades spoke to a Bank of America representative who stated that Parades' HAMP application was incomplete and that he needed to submit more financial documentation. (Doc. 1 at ¶ 41). Parades received the same or similar directives in later phone calls. (Doc. 1 at ¶ 41). Parades alleges these statements were false and this was an intentional act by Bank of America to frustrate his application process. (Doc. 1 at ¶¶ 41, 43). But Parades relied on these statements and resubmitted his application and supporting information. (Doc. 1 at ¶ 44).

On March 24, 2010, a Bank of America representative named "Roger" verbally informed Parades that his HAMP application was approved for a trial loan modification. (Doc. 1 at ¶ 46). The representative then requested Parades make "trial payments" of more than $1,200.00. (Doc. 1 at ¶ 46). Parades alleges this statement was false because the HAMP application had not been approved. (Doc. 1 at ¶ 46). But Parades made three trial payments of more than $1,200.00. (Doc. 1 at ¶ 49). He claims he was damaged because Bank of America "placed those payments in an unapplied account and refused

to credit his account," because he ultimately lost his home, and because his credit rating suffered. (Doc. 1 at 50).

Finally, Parades alleges Bank of America charged him for twenty-nine property inspections between 2008 and 2012, even though he was "living in the home". (Doc. 1 at ¶ 52). He claims that Bank of America applied trial payments submitted for the HAMP modification to pay for inspection fees, and that it "omitted the fact that the bank was conducting unnecessary and improper inspections on his home and charging his account inspections fees." (Doc. 1 at ¶ 53).

Parades' home was foreclosed upon in May 2010, and a judgment was entered. (Doc. 1 at ¶ 49). He then vacated the home in 2012. (Doc. 1 at ¶ 49). Based on these facts, Parades filed the Complaint on October 31, 2017, alleging a single fraud count. (Doc. 1). Now, Bank of America moves to Dismiss. (Doc. 12).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a pleading for failure to state a claim upon which relief can be granted. The propriety of such a dismissal is guided by the *Twombly–Iqbal* plausibility standard, which requires a plaintiff to allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" to support a claim. *Twombly*, 550 U.S. at 556; *see also Randall v. Scott*, 610 F.3d 701, 708 n. 2 (11th Cir. 2010). The Court must accept all factual allegations in a plaintiff's complaint as true and take them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). This acceptance is limited to well-pleaded factual allegations. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). A "the-defendant-unlawfully-harmed me accusation" is insufficient. *Iqbal*, 556 U.S. at 677.

"Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal modifications omitted).

Fraud allegations are subject to heightened pleading standards under Federal Rule of Civil Procedure 9(b), which requires a party to "state with particularity the circumstances constituting fraud." Generally, this occurs where the pleading alleges

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and
>
> (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and
>
> (3) the content of such statements and the manner in which they misled the plaintiff, and
>
> (4) what the defendants obtained as a consequence of the fraud.

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997) (internal quotations omitted). But allegations relating to "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*

Rule 9(b) "serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Id.* at 1370-71 (internal quotations omitted). Though it imposes a heightened pleading standard, the Eleventh Circuit has cautioned that "Rule 9(b) must not be read to abrogate [R]ule 8 . . . and a court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directives of [R]ule 9(b) with the broader policy of notice pleading." *Friedlander v. Nims*, 755 F.2d 810, 813 (11th Cir. 1985). Requisite particularity has been

4

found in a pleading that lacked specifics but still presented enough description to sufficiently apprise defendants of allegations lodged against it. *See Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984) (list containing fraud allegations and nature of statements found to meet the Rule 9(b) threshold, even though precise words were not alleged); *see also Brooks*, 116 F.3d at 1371 ("alternative means are also available to satisfy the rule."). Though "[i]t is certainly true that allegations of date, place or time [are traditional indicia of particularity] . . . nothing in the rule requires them." *Seville Indus. Mach. Corp.*, 742 F.2d at 791.

## DISCUSSION

Bank of America argues the Complaint should be dismissed for a multitude of reasons. When confronted with the same claims, arguments, and defenses, a court in the Middle District of Florida has found that only one of Bank of America's arguments need be addressed because Plaintiffs' claims are time-barred. *Eddie v. Bank of Am., N.A.*, No. 8:17-CV-1534-T-26TBM, 2018 WL 573406, at *2 (M.D. Fla. Jan. 26, 2018). The Court agrees with that decision and will apply the same logic here.

In Florida, fraud allegations are subject to a four-year statute of limitations. Fla. Stat. 95.11(3)(j). Florida's delayed discovery doctrine states that actions founded on fraud accrue "from the time the facts giving rise to a cause of action were discovered or should have been discovered with the exercise of due diligence. Fla. Stat. § 95.031(2)(a); *see also Hearndon v. Graham,* 767 So. 2d 1179, 1184 (Fla. 2000); *Thomas v. Lopez*, 982 So. 2d 64, 67 (Fla. 5th DCA 2008). Here, all of Bank of America's allegedly fraudulent activity took place between 2009 and 2012, approximately five years before the Complaint was filed and therefore outside of Florida's four-year statute of limitations. (Doc. 1 at ¶¶

5

34, 36-41, 46, 49, 52). His claims must fail because the Complaint does not adequately plead the elements necessary under the delayed discovery doctrine.

Though the Complaint states that Parades discovered five declarations from another case regarding Bank of America's fraudulent practices (Docs. 1-2; 1-3; 1-4; 1-5; 1-6), it does not specifically detail when or how that information was discovered. It seems this was for a good reason. Though the declarations all detail the same or similar practices undertaken by Bank of America, four were formed in May or June 2013, which still lies outside of the four year statute of limitations for this case. (Docs. 1-3; 1-4; 1-5; 1-6). Though one declaration was made in February 2017 (Doc. 1-2), it offers no new information from the four 2013 declarations, and nothing that could not have been gleaned through due diligence at an earlier date.

Moreover, Parades fails to allege why he could not have discovered the allegedly fraudulent acts at or near the time of commission through exercising of reasonable due diligence. First, Parades alleges that in a 2009 telephone conversation, a Bank of America representative misrepresented that default or delinquency on their Mortgage was required to be eligible for HAMP. But Florida law is clear that simple reliance on a misrepresentation is not enough to delay the accrual of fraud claims because a party has a duty of reasonable due diligence. *See Thomas,* 982 So. 2d at 67. Had he checked, he would have discovered that HAMP directives were publicly available online. U.S. Dep't of Treasury, HAMP Supplemental Directive (SD) 09–01 ("SD 09–01") (Apr. 6, 2009). He would have also discovered what he was told was incorrect, and that a mortgage could be HAMP eligible if it was delinquent *or* if default was reasonably foreseeable. *Id.* at 2.

Failing to verify the statements with publicly available information does not qualify as due diligence.

Second, Parades alleges he was falsely informed that Bank of America did not receive his documents, or that his documents were incomplete or out of date, which resulted in the submission of repeated HAMP applications. Yet, had Parades exercised reasonable due diligence, when his home was foreclosed upon in 2010 he would have known of the completeness of his documents and the potentially faulty processing of his HAMP application. Instead, Parades waited seven years to bring his claim. This again fails to satisfy the due diligence threshold.

Third, Parades allege that Bank of America made false statements of fact when it stated he was "approved" for a HAMP modification and requested "trial payments." (Doc. 1 at ¶ 46). But as the Court found above, if those statements were false, Parades could have concluded when his home was foreclosed upon in 2010, giving him until 2014 to sue. Parades waited until October 2017 to seek redress. His conscious decision not to pursue a remedy cannot be the basis to delay the accrual of the statute of limitations.

Fourth, to the extent that Parades argues Bank of America "fraudulently omitted" its practice of placing trial period payments into "unapplied accounts," his claims also fail. As in *Eddie*, "this is exactly how the Treasury Department requires servicers to handle trial payments." *Eddie*, 2018 WL 573406, at *3 (citing Making Home Affordable Program Handbook for Servicers of Non–GSE Mortgages, v5.1 129 (May 26, 2016)). Even if the activity was fraudulent, Parades would have been aware he made unapplied payments when his home was foreclosed upon in 2010. Claims stemming from those matters thus began to accrue then.

Finally, Parades claims he was defrauded by Bank of America because it did not communicate it was conducting "unnecessary and improper inspections on his home and charging his account inspection fees" between 2008 and 2012. (Doc. 1 at ¶¶ 52-53). But Parades does not allege he was unaware of these inspections while he lived in the home, that he could not have discovered this information through exercising reasonable due diligence, or why it he waited seven years to seek redress. Therefore, the claim fails.

Plaintiffs attempt to avoid the inexorable reality of dismissal by arguing that dismissing the Complaint as time-barred at this stage would be procedurally unwarranted. The Court disagrees. The Eleventh Circuit has specifically held that dismissal on statute of limitations grounds is appropriate where it is "apparent from the face of the complaint" that the claim is time-barred. *La Grasta*, 358 F.3d at 845 (internal punctuation omitted). This is precisely the case here. As the Court has outlined, it is apparent from the face of the Complaint that the misrepresentations and actions occurred from 2009 through 2012. At best, Parades waited five years to sue. Because the Complaint does not plead the specific facts necessary to delay the accrual of Florida's four-year statute of limitations, the court finds as a matter of law that the claims are due to be dismissed.[2]

Accordingly, it is now

**ORDERED:**

1. Defendant Bank of America's Motion to Dismiss (Doc. 11) is **GRANTED** and this case is **DISMISSED WITH PREJUDICE**.

---

[2] Plaintiffs neither seek leave to file an amended complaint, nor suggest to the Court the substance of any proposed amendment. Thus, dismissal with prejudice is proper. *Cita Tr. Co. AG v. Fifth Third Bank*, 879 F.3d 1151, 1157 (11th Cir. 2018).

2. The clerk is directed to enter judgment in favor of the Defendant, to terminate any pending motions, and to close this case.

**DONE** and **ORDERED** in Fort Myers, Florida this 27th day of February, 2018.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record